UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

VINCENT A. MARTINO,    Case No.: 21-72023-reg

                              Debtor.
-----------------------------------------------------------------x
MARC A. PERGAMENT, CHAPTER 7 TRUSTEE
OF THE ESTATE OF VINCENT A. MARTINO,

                              Plaintiff,    Adv. Pro. No.: 22-08027-reg
           - against -

VINCENT MARTINO, III aka VINCENT A.
MARTINO, JR.,
                              Defendant.
-----------------------------------------------------------------x

## DECISION AFTER TRIAL

       This matter is before the Court in an adversary proceeding commenced by Marc A. Pergament (the "Trustee" or the "Plaintiff") as chapter 7 trustee of the estate of Vincent A. Martino (the "Debtor") seeking to recover $35,000 from the Debtor's son, Vincent Martino III aka Vincent A. Martino, Jr. (the "Defendant"). The Trustee alleges that by allowing the Defendant—a child who had just reached the age of majority—continued use of his bedroom in the family home and providing the Defendant with food and drink and allowing the Defendant the use of the Debtor's car, the Debtor has unjustly enriched his son at the expense of the Debtor's creditors and/or made constructive fraudulent conveyances to the Defendant, his child.

       There is a body of caselaw that has developed around chapter 7 trustees' efforts to claw back tuition payments and other expenses paid by debtors to or on behalf of both minor and adult children. *See, e.g., Geltzer v. Oberlin College, et al. (In re Sterman)*, 594 B.R. 229 (Bankr. S.D.N.Y. 2018); *Geltzer v. Xaverian High School (In re Akanmu)*, 502 B.R. 124 (Bankr.

1

E.D.N.Y. 2013); *Pereira v. Wells Fargo Bank, N.A. et al (In re Gonzalez)*, 342 B.R. 165 (Bankr. S.D.N.Y. 2006). Those cases examine what, if any, "value" is received by the debtor/parent in exchange for the cost of the education or other benefit provided to the child, or the moral responsibility of a parent to provide for a child. *See, e.g.*, *In re Gonzalez*, 342 B.R. at 172 (discussing "'psychic' and other intangible benefits" of transfers made to or for the benefit of a child). This case is markedly different. First, the alleged "transfers" by the Debtor for room and board in the family home have been fabricated by the Trustee out of some fiction that the Debtor's son should have paid a percentage of the household expenses including the mortgage, utilities, and food bills as if he were a renter who failed to pay his rent. The alleged "transfers" for room and board are not transfers at all and certainly are not transfers that, had they not been made, would have provided any value to the Debtor's creditors. Second, even if the benefits provided to the Defendant could be considered "transfers," the Trustee failed to take into account that the Debtor's spouse is herself a wage earner and co-owner of the family residence as tenants by the entirety. Would the Trustee have this Court establish a standard allocating between the Debtor and his spouse an amount of money each is responsible for with regards to their children? If that is the Trustee's theory of this case, he failed to provide any factual basis or evidence as to how these alleged "transfers" to the Defendant were not entirely the spouse's property and not subject to claw back. Finally, there was unrefuted evidence presented at trial that the Defendant paid back much if not all of the Debtor's expenses for the Vehicle that was used by the Defendant.

The Court need not determine, as with the tuition-related cases, whether the Debtor received reasonably equivalent value in the form of, for example, "psychic" and "other intangible benefits" flowing from allowing his adult son to live at home and drive his car, *see id.*,

because the Trustee in this regard failed to prove there were in fact any transfers of value of the Debtor's property. However, the Trustee's failure to present a viable case is not the most disturbing aspect of this proceeding. What is most concerning is the lack of judgment shown by the Trustee in commencing a case under these facts. In this Court's experience, most debtors are honest people facing difficult times seeking a fresh start. People facing financial difficulties utilize bankruptcy not as a first option but rather as a last resort. They should not be fearful that utilizing the rights Congress has given them may come at the cost of subjecting their children or other members of their family to ill-conceived actions by an overly aggressive trustee. It is disappointing that the Trustee in bringing this case seems to have forgotten that bankruptcy is a process that combines law and equity. Bankruptcy judges and practitioners understand that we are part of an imperfect system that attempts to reach a fair and equitable result for debtors and their creditors. *See Purdue Pharma L.P. et al v. The Official Committee of Unsecured Creditors of Purdue Pharma L.P. et al. (In re Purdue Pharma L.P. et al)*, No. 22-110-bk (L), 2023 WL 3700458, at *1 (2d Cir. May 30, 2023) ("Bankruptcy is inherently a creature of competing interests, compromises, and less-than-perfect outcomes. Because of these defining characteristics, total satisfaction of all that is owed—whether in money or in justice—rarely occurs."). Panel trustees play a vital role in this process and if a trustee no longer understands this most basic point it is up to the Court to remind him.

For the reasons that follow the Court finds that the Trustee has failed to satisfy his burden of proof on all causes of action of the Complaint.

### Facts

The Defendant and the Debtor, along with the Debtor's wife and daughter, reside at 3872 Priscilla Place, Seaford, NY where they have resided as a family for many years. The Defendant

was born on January 18, 1998 and turned 21 on January 18, 2019 – 34 months before the Debtor filed bankruptcy.[1] Although it appears that at some point the Defendant attended Nassau Community College, the Debtor testified that in 2019 the Defendant was working full-time. Transcript of April 25, 2023 Trial ("Tr.") at 12.

On July 3, 2019, the Debtor purchased a used 2017 Nissan Maxima (the "Vehicle") for approximately $25,000. Ex. C. The Vehicle is financed, and the monthly payment is $379. The Debtor testified that the Vehicle was purchased in his name because the Defendant did not have any credit. Tr. at 11. He also testified that the Vehicle is the Defendant's and the Defendant made the $3,215 down payment directly to the car dealership with his own funds. Tr. at 11, 31. The Debtor made the car payments, but the testimony at trial established that the Defendant reimbursed the Debtor for each car payment. Tr. at 11. The Vehicle was insured under the Debtor's car insurance policy at a cost of $2,221.56, or approximately $185 per month. Ex. G.[2] The Debtor also testified that the Defendant reimbursed him for the cost of insurance for the Vehicle. Tr. at 26, 44. The Defendant introduced copies of 14 total electronic payments in varying amounts totaling $5,400 by the Defendant to the Debtor from July 2020 through November 2021. Ex. 1. The electronic payments have memos describing the purpose of the transfers such as: "Bills", "Car", "Car note", "Rest", "For dad", and "payback". *Id.* Both the

---

[1]   The age of majority in New York is 21 years old. *Columbia Cnty. Dep't of Soc. Servs. ex rel. William O. v. Richard O. et al.*, 692 N.Y.S.2d 496, 498 (App. Div. 3d Dep't. 1999). Settled New York law recognizes a parent's obligation to provide minor children with housing, food, education and healthcare, but not after the age of majority. *See Geltzer v. Oberlin College, et al. (In re Sterman)*, 594 B.R. 229 (Bankr. S.D.N.Y. 2018); *Geltzer v. Lawrence Woodmere Academy (In re Michel)*, 572 B.R. 463, 475 (Bankr. E.D.N.Y. 2017); *Geltzer v. Xaverian High School (In re Akanmu)*, 502 B.R. 124, 132 (Bankr. E.D.N.Y. 2013).

[2]   Exhibit G is a policy statement for the period February 15, 2021 through February 15, 2022. This is not evidence of the policy premium for the pre-petition period for which the Trustee seeks recovery but is only an estimate.

4

Debtor and Defendant testified that the remainder of the repayments were made in cash. Tr. at 25, 45. The Defendant testified that he would sometimes use the Vehicle to drive his mother to work and to the airport. Tr. at 46.

The Debtor testified that the Defendant would sometimes provide cash for groceries and would help around the home. Tr. at 15, 22. Further, the Defendant testified that he did not have unfettered use of the home. Tr. at 47. Additionally, the Debtor testified that the Defendant could not afford to rent an apartment on his own. Tr. at 24. The Defendant's tax returns show total income of $6,357 and $4,903 respectively for the 2019 and 2020 tax years. Exs. E, F.[3]

### Procedural History and Allegations of the Complaint

On November 20, 2021 (the "Petition Date"), the Debtor voluntarily filed a petition for relief under chapter 7 of the Bankruptcy Code and the Trustee was appointed. On April 27, 2022, the Trustee commenced this adversary proceeding. On April 25, 2023, a trial was held. Both the Debtor and the Defendant testified at trial. Plaintiff's exhibits A through G were admitted, as was Defendant's exhibit 1. Upon conclusion of the trial, the matter was marked submitted.

The Complaint alleges the Debtor made payments or advanced funds on behalf of the Defendant for the use of the Vehicle and allowed the Defendant to remain in his childhood room in the family home without paying rent while a student at Nassau Community College and then later while the Defendant was employed full-time. Compl., ECF No. 1, ¶ 1. The Complaint valued the Room and Board and use of the Vehicle for the two (2) years prior to the Petition

---

[3] At trial, the Trustee questioned the Defendant extensively about certain bank statements that purportedly showed deposits into the Defendant's account that exceeded the income reported on his tax returns. At the conclusion of the trial, the Trustee made an application to amend the complaint to conform with the evidence which showed actual deposits into the Defendant's account. Although the Court at the time granted the Trustee's request to file an amended complaint, it also noted that the Trustee never moved the bank statements into evidence. Tr. at 54, 58. The Trustee did not file an amended complaint.

Date at $35,000 (the "Transfers"). *Id.* ¶¶ 10, 20. Further, the Trustee alleges the Transfers were made at a time when the Debtor was not financially able to make the payments and there were unsecured creditors holding claims allowable under 11 U.S.C. § 502 who could have avoided the Transfers, including Merrick Bank, Midland Credit Management, Inc., and Capital One Bank. *Id.* ¶¶ 12, 15. The Trustee filed the instant case seeking to recover the Transfers under 11 U.S.C. § 548(a)(1)(B)(ii)(I), (II), and (III), N.Y. Debtor and Creditor Law ("NYDCL") §§ 273 and 275, and the doctrine of unjust enrichment. *Id.* ¶¶ 17-44.

## Discussion

At trial, but not in the Complaint, the Trustee attempted to explain how he arrived at the $35,000 figure he seeks to recover: (1) $375 per month for car payments for the 30 months preceding the bankruptcy filing (total $11,250); (2) $1,800 per year for car insurance for the Vehicle for three (3) years (total $5,400); and (3) $22,000 for Room and Board for the two (2) years preceding the bankruptcy filing. Tr. at 4-6, 15, 17. He did not explain why he is attempting to recover car and car insurance payments for 30 and 36 months, respectively, when the Debtor only acquired the Vehicle twenty-nine (29) months prior to filing bankruptcy; or how he arrived at the $1,800 per month for car insurance when his own exhibit shows that car insurance for the Vehicle for the one-year period ending in February 2022 was $2,221.56. Ex. G. The Trustee created a fictitious fee for Room and Board by adding up total household expenses including mortgage, utilities, telephone and food, and dividing it by the four members of the family (25%) and then giving the Defendant a discount to 20% for his share of the family's household expenses for the two (2) year period preceding the bankruptcy filing. The total as described by the Trustee, above, adds up to $38,650, and the Trustee is seeking to recover $35,000 of that.

    a.   **11 U.S.C. §§ 548(a)(1)(B) and 550(a)(1)**

In the first three causes of action of the Complaint, the Trustee seeks to avoid and recover the alleged Transfers from the Defendant as constructive fraudulent conveyances pursuant to 11 U.S.C. § 548(a)(1)(B) which states that a trustee may avoid any transfer of an interest of the debtor or any obligation incurred by the debtor if the debtor received less than "reasonably equivalent value in exchange for such transfer or obligation" and the debtor:

(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured

11 U.S.C. § 548(a)(1)(B).

The burden of proof is on the plaintiff to establish the elements of this section by a preponderance of the evidence. *See Togut v. RBC Dain Correspondent Servs. et al. (In re S.W. Bach & Co.),* 435 B.R. 866, 875 (Bankr. S.D.N.Y. 2010).

There are fatal deficiencies in the Trustee's proof on these fraudulent conveyance claims. The first involves the question of whether the alleged "Transfers" for Room and Board, if they were in fact transfers as contemplated under § 548, were transfers of the Debtor's property. The Trustee fails to take into account that the Debtor's non-filing spouse was both a wage earner and the owner of the home with the Debtor as tenants by the entirety. This would mean that some significant part of the alleged value transferred to the Defendant for Room and Board actually was not property of the Debtor, but rather was property of the non-filing spouse and not subject to avoidance. Second, the Trustee offered no evidence to determine the value of the "property"

transferred, *i.e.*, the bedroom occupied by the Defendant in the Debtor's house, nor did he provide the Court with any evidence that the Debtor had the right to rent the room to a third party. The Trustee failed to provide any analysis of how the alleged Room and Board "transfers" had any actual value in the hands of the Debtor so as to be of actual value to his creditors. The Trustee presented no evidence that the Debtor expended any additional funds, or if he did, how much that amounted to, to support the Defendant living at home. For example, the Debtor's mortgage payment would remain the same regardless of whether the Debtor lived in the family home, and even if the monthly grocery or utility bills were a fraction higher than they would have been had the Defendant not lived at home, the Trustee did not prove that. In lieu of providing any actual evidence, the Trustee manufactures an unsupportable argument that estimates Room and Board at $22,000.

Next, the testimony and evidence at trial raises the issue of whether the Debtor received "reasonably equivalent value" in exchange for the alleged Transfers. The Defendant presented unrefuted evidence of monthly payments made through Venmo to reimburse the Debtor for some of the car-related and household expenses. Ex. 1. Both the Debtor and the Defendant testified that additional payments were made with cash. Tr. at 25, 45. Both the Defendant and the Debtor testified that payments were made monthly and that the Defendant did not default in payments. Tr. at 25-26, 45. Further, the Debtor testified that his son helped around the house and performed tasks that the Debtor is no longer fit to do. Tr. at 22. He also testified that his son would sometimes provide money for groceries. Tr. at 15. The Trustee did not offer any evidence to the contrary and so the Court accepts this testimony as credible. Accordingly, the Court finds that the Debtor did receive reasonably equivalent value in exchange for the alleged Transfers.

Finally, although the Trustee alleges that the Debtor was not financially able to make the Transfers when he did (Compl., ECF No. 1, ¶ 12-13), the Trustee did not allege, or prove at trial, facts separate from these bare conclusions sufficient to prove that the Debtor was insolvent on the dates of the Transfers, or that he became insolvent as a result of these payments.

The Trustee failed to prove the elements of § 548(a)(1)(B), and the first three causes of action will be dismissed.

### b.   NYDCL §§ 273 & 275 and 11 U.S.C. § 550(a)(1)

The Complaint also seeks to recover the alleged Transfers as constructive fraudulent transfers under state law. NYDCL § 275, provides that:

> Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

NYDCL § 275.

Putting aside that the Court has already found that the Debtor received reasonably equivalent value for the alleged Transfers (*i.e.*, fair consideration under the state statute)[4], the Court will analyze the "ability to pay" element of NYDCL § 275. Under NYDCL § 275 the "ability to pay" test requires proof of the transferor's subjective intent or belief that it will incur debt it cannot pay at maturity. *See Sama v. Mullaney et al. (In re Wonderwork, Inc.)*, 611 B.R. 169, 212 (Bankr. S.D.N.Y. 2020). There is nothing in the evidentiary record demonstrating that it was the Debtor's belief when he allowed his son to live in the family home without paying room

---

[4]     Both "fair consideration" under the NYDCL and "reasonably equivalent value" under the Bankruptcy Code are "interpreted similarly by the courts" and have "the same fundamental meaning." *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 677 (Bankr. S.D.N.Y. 2000), *aff'd*, 264 B.R. 303 (S.D.N.Y. 2001).

and board, or when he fronted his son's car and car insurance payments, that he would not be able to pay back his creditors. Further, at trial, the Plaintiff did not present evidence to show that the Debtor intended or believed that he would incur debts beyond his ability to pay when the debts matured. Accordingly, the Court finds that the Trustee has not sustained his burden of proof and cannot avoid the Transfers under NYDCL § 275. Judgment is granted in favor of the Defendant as to the fifth cause of action.

Under NYDCL § 273:

(a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(1) with actual intent to hinder, delay or defraud any creditor of the debtor; or
(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

The relevant elements of § 273 mirror the relevant elements of § 548(a)(1)(B), and the Court's reasoning, above, is equally applicable here. As stated above, the Court finds that either (a) there was no transfer of the Debtor's property, or (b) if there was a transfer there was reasonably equivalent value given to the Debtor by the Defendant in exchange. The Trustee has also failed to prove the other requisite elements under § 273(a)(2)(i), (ii) or (iii). Therefore, the fourth cause of action will be dismissed.

   c.  **Unjust Enrichment**

The Plaintiff alleges the Debtor's son was unjustly enriched at the expense of the Debtor's creditors. Under New York Law, to succeed on a claim for unjust enrichment, a

plaintiff must show "that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd. et al. v. Phoenix Pictures, Inc. et al.*, 373 F.3d 296, 306 (2d Cir. 2004) (citation omitted), *cert. denied*, 544 U.S. 949 (2005). Although the Defendant was arguably "enriched" by his parents allowing him to remain in the family home instead of kicking him out on the street, the other two elements of the unjust enrichment claim fail. As discussed above, the Trustee did not prove that the Room and Board provided to the Defendant was at the Debtor's expense. Also, the testimony at trial established that Debtor received repayment for the Vehicle-related Transfers. Finally, the Court finds that equity and good conscience do not militate against permitting the Defendant to retain the value of the Room and Board the Trustee is seeking to recover. Rather, for all of the reasons stated herein, equity and good conscience in this case lead the Court to the conclusion that the Trustee's claim must be denied. The sixth cause of action will also be dismissed.

## Conclusion

Panel trustees play a vital role in the administration of the bankruptcy laws. Most attempt to balance the rights of the debtor honestly and fairly with the rights of creditors. It is a difficult job, but for the most part, a job trustees handle with expertise acquired over many years. It is within this framework that the Court finds it hard to fathom why a chapter 7 panel trustee in this District would bring a case under these facts. This case demonstrates a failure to understand what is required to prove the necessary elements of the claims alleged. Equally disturbing is the lack of judgment exercised by this Trustee. The bankruptcy courts in this country handle over a million cases per year. Few of those cases require direct intervention by a judge. We depend on the expertise and common sense of the trustees and the bar to balance the rights of the parties.

Preserving that balance is critical to the functioning of the bankruptcy courts. If a trustee has to be reminded of this balancing act, it is the role of the United States trustee to exercise some degree of oversight so as to avoid a repeat of this matter.

For the reasons set forth herein, all of the claims asserted by the Trustee will be dismissed.



Dated: Central Islip, New York
June 5, 2023

Robert E. Grossman
United States Bankruptcy Judge